UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 16-** |
| v. | : | |
| **VERONICA WASHINGTON,** | : | **18 U.S.C. § 371 (Conspiracy);** |
| | : | **18 U.S.C. § 1344(1) and (2)(Bank Fraud);** |
| **Defendant.** | : | **Criminal Forfeiture:** |
| | : | **18 U.S.C. §982(a)(2)(A) and** |
| | : | **21 U.S.C. §853(p).** |

## INFORMATION

The United States Attorney informs the Court:

### COUNT ONE

### (CONSPIRACY)

### Introduction

At all times material to this Information:

1. SunTrust Mortgage, Inc. ("SunTrust Mortgage") was a mortgage lending business in that it financed debt secured by an interest in real estate, whose activities affected interstate and foreign commerce; as such, it was a financial institution pursuant to Title 18, United State Code, Section 20(10). In addition, SunTrust Mortgage was a wholly-owned subsidiary of SunTrust Bank, which was a financial institution with deposits insured by the Federal Deposit Insurance Corporation. SunTrust Mortgage was in the business, among other things, of loaning money to individuals ("borrowers") to purchase residential real estate.

2. If the borrower qualified for a mortgage loan, then the lending bank agreed to loan the money to use to buy the house on the condition that the individual pledge as security the

1

purchased real estate. The property served as collateral so that if the individual failed to pay the loan, the lending bank could foreclose on the mortgage and take title to the real estate to resell and recoup its losses.

3. In order to preserve its option to foreclose on the mortgage loan, lending banks required the borrower to sign a Note and Deed of Trust, both of which would be filed in the public land records in the jurisdiction where the real estate was located, to serve as public notice that the lending bank held a "lien" on the property. The Note was the borrower's promise to repay the loan to the lending bank, and the Deed of Trust was the public notice of the debt and the grant of authority to the lending bank to sell the property if the borrower failed to timely pay on the Note.

4. The Note and Deed of Trust remained on the public land records unless and until the borrower repaid the mortgage loan in full.

5. If the borrower repaid the loan, the lending bank would file a "Certificate of Satisfaction" in the public land records declaring that the borrower had repaid the loan and henceforth owned the property "free and clear" of any debt from the lending bank. The Certificate of Satisfaction was signed by an individual authorized to speak for the lending bank, and the signature would be notarized.

6. If the property were resold before the borrower paid the mortgage loan, the borrower's sales proceeds would be reduced by the amount the lending bank was owed as of the day of settlement. The new buyer's lending bank required the existing mortgage to be paid in full before agreeing to loan money to the new buyer so that there would be no other liens which could take precedence over the new lender's lien.

7. A "settlement" was a meeting where the buyer and the seller signed various loan documents (such as the Note and Deed of Trust) and legal documents transferring the property from the seller to the buyer (such as the Deed). Settlements were conducted by a title and escrow company, whose job was to prepare the settlement documents as requested by the new buyer's mortgage lender, and to ensure that no other lien took precedence over the Deed of Trust signed by new buyer for the mortgage loan. Title and escrow companies (either themselves or through a title abstractor) researched the public land records filed regarding the property for liens to determine, among other things, whether the property was pledged as collateral for any loan.

8. If the property were owned "free and clear" and a Certificate of Satisfaction were filed in the land records, then there would be no pre-existing mortgage to pay off, and the seller would receive the sales proceeds without being reduced by any loans.

### District of Columbia's Recorder of Deeds

9. If the property were located in the District of Columbia, then the lending bank's Note and Deed of Trust, and the Certificate of Satisfaction if the mortgage loan were repaid, would all be filed with the District of Columbia's Recorder of Deeds, the public land records for the District of Columbia.

10. The DC Recorder of Deeds was housed in a building located at 1101 4th Street, SW, Washington, DC. Members of the public were allowed to file documents with the Recorder of Deeds during business hours, after signing a log with security at the front desk. Members of the public presented valid photo identifications, such as a driver's license, which was noted on the log.

11. Some documents filed with the Recorder of Deeds, such as Deeds, Notes, Deeds of Trust, and Certificates of Satisfaction, included an address where the Recorder of Deeds staff would mail the original after recording, filing, and stamping the document.

12. Title companies and title abstractors relied upon the filings with the Recorder of Deeds to determine whether a property was encumbered by a mortgage loan.

### 123 57th Street, SE, Washington, DC

13. The defendant VERONICA WASHINGTON purchased residential real estate located at 123 57th Street, SE, Washington, DC, ("123 57th Street, SE") on or about February 20, 2008. To buy the property, she obtained two mortgage loans for approximately $470,000 in total from SunTrust Mortgage.

14. By 2009, the defendant VERONICA WASHINGTON had failed to maintain timely mortgage payments.

15. In February 2010, the defendant VERONICA WASHINGTON entered into a "Home Affordable Modification" trial period plan loan program with SunTrust Mortgage in an attempt to clear the arrearages to her mortgage payments.

16. By May 2010, the defendant VERONICA WASHINGTON was again behind on her mortgage payments and on May 7, 2010, a Notice of Foreclosure was filed with the DC Recorder of Deeds.

17. In April 2013, SunTrust Mortgage began the process of foreclosing on the mortgage and taking possession of the property at 123 57th Street, SE, for the defendant VERONICA WASHINGTON's failure to make good and timely payments on the mortgage loan.

### The Conspiracy

18. From at least in or about the summer of 2013, and continuing thereafter through at least

in or about December 2013, in the District of Columbia and elsewhere, defendant VERONICA WASHINGTON did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with other persons both known and unknown to the government to commit offenses against the United States, that is: bank fraud, by engaging in a scheme to defraud and obtain money and property from a financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344(1) and (2).

### Goal of the Conspiracy

19. It was a goal of the conspiracy that defendant VERONICA WASHINGTON and her co-conspirator steal approximately $337,000 from SunTrust Mortgage by representing that VERONICA WASHINGTON owned 123 57th Street, SE, free and clear of any mortgage enabling her to obtain money which she was not entitled to receive when she sold the property.

### Manner and Means

It was a part of the conspiracy that:

20. Sometime before October 2, 2013, two fake Certificates of Satisfaction which falsely represented that the SunTrust Mortgage loans on 123 57th Street, SE, had been paid and that the defendant VERONICA WASHINGTON owned the property "free and clear," were filed with the DC Recorder of Deeds. These fake Certificates of Satisfaction contained the forged signatures of someone purporting to be an individual authorized to sign for SunTrust Mortgage.

21. On or about October 11, 2013, the defendant VERONICA WASHINGTON listed the property of 123 57th Street, SE, for sale for $425,000, knowing that she owed in excess of

$470,000 on the two mortgage loans she obtained from SunTrust Mortgage in order to purchase the house in February 2008.

22. On or about November 10, 2013, the defendant VERONICA WASHINGTON agreed to sell the property at 123 57th Street, SE, to an individual identified in these proceedings as B.K.O. for $379,000, although, at the time she owed in excess of $470,000 on the two mortgage loans she obtained from SunTrust Mortgage.

23. In or about December 2013, after the defendant VERONICA WASHINGTON signed documents selling 123 57th Street, SE, to B.K.O., the defendant VERONICA WASHINGTON caused the title and escrow company to wire to her the sales proceeds of $337,105.06, which she shared with a conspirator.

### Overt Acts

24. In furtherance of the conspiracy and to effect the object thereof, defendant VERONICA WASHINGTON and other members of the conspiracy committed the following overt act, among others, in the District of Columbia and elsewhere:

25. On or about December 11, 2013, in the District of Columbia, the defendant VERONICA WASHINGTON signed settlement documents at the title and escrow company's offices selling 123 57th Street, SE, to B.K.O. for a sales price of $379,000 and certifying that she owned the property free and clear of any mortgage.

**(Conspiracy to Commit Bank Fraud, in violation of
Title 18, United States Code, §§ 371 and 1344(1) and (2)).**

## **FORFEITURE ALLEGATION**

1. Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of this offense, pursuant to 18 U.S.C. § 982(a)(2)(A). The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of this offense.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and Title 21, United States Code, Section 853(p))**

CHANNING D. PHILLIPS

United States Attorney
for the District of Columbia

By: _____
VIRGINIA CHEATHAM
Assistant United States Attorney
D.C. Bar # 411980
Virginia.cheatham@usdoj.gov
United States Attorney's Office
Fraud and Public Corruption Section
555 4th Street, N.W., Room 5836
Washington, D.C. 20530
(202) 252-7820